## McCormick, Appellant, *v.* Bickerton.

*Judgment—Opening of judgments—Defenses—Payment—Evidence—Corroboration.*

1. A farm was sold at sheriff's sale on a judgment entered on a judgment bond secured by a mortgage of the real estate sold. The judgment plaintiff purchased the property for the amount of the taxes and costs and subsequently issued an alias fi. fa. to collect the judgment. Upon the application of the judgment defendant, the court opened the judgment and the defendant pleaded payment. The defendant testified, although contradicted, that on the day preceding the sale, plaintiff agreed with defendant that if he, plaintiff, should buy the farm, it would be in satisfaction of the debt, and that relying upon plaintiff's statement, defendant absented himself from the sale and discontinued his efforts to raise money to pay the debt. The lower court charged the jury that in order to find for defendant they must find corroboration of the defendant's case. The jury found a verdict for defendant, upon which judgment was entered. *Held*, that from the inherent probability of willingness on the part of the plaintiff to accept the farm in satisfaction of the debt and from the fact that defendant remained away from the sale, manifestly to his detriment, the jury might find corroboration of the defendant's case, and the judgment was affirmed.

*Practice, Supreme Court—Appeals—Instructions to jury.*

2. Where the charge taken as a whole is not erroneous or inadequate and presents the issues of fact fully, the Supreme Court will not reverse, although portions of the charge standing alone, may fairly and justly be open to criticism.

Argued Oct. 11, 1915. Appeal, No. 18, Oct. T., 1915, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1912, D. S. B., No. 1005, on verdict for defendant, in case of Benjamin N. McCormick v. Thomas S. Bickerton. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and FRAZER, JJ. Affirmed.

Rule to open judgment. Before COHEN, J.

The court opened the judgment and let the defendant into a defense.

The facts appear in the charge to the jury, which was, in part, as follows:

This is a suit in which Benjamin N. McCormick appears as the plaintiff and Thomas S. Bickerton as the defendant; but the defendant, Bickerton, is the real plaintiff, and the plaintiff, McCormick, is the real defendant, because the burden of proof in this case is on the defendant. He must prove by the weight of the evidence to your satisfaction his defense. On a certain day in the month of April, 1910, Bickerton gave to McCormick a bond and mortgage, and McCormick loaned to Bickerton six thousand dollars. Bickerton gave McCormick a judgment bond. Now, you know the same difference exists between a common bond and a judgment bond that exists between a common promissory note and a judgment note. For this loan of six thousand dollars, Bickerton gave McCormick this judgment bond of six thousand dollars, payable in three years, with interest, payable semi-annually, at the rate of six per cent. per annum; and to secure the payment of that bond he gave him a mortgage on a farm (after McCormick had gone out and examined the farm, the property) containing, I believe, some 97 acres. So far the transaction was perfectly proper—up to this point. The impropriety, it is alleged by the defendant, Bickerton, came afterwards. The defendant failed to pay a semi-annual installment of interest, and made other default; and the plaintiff, McCormick, as he had a perfect right to do so in law, issued an execution. He had the right to issue an execution, and if he had issued an execution at the wrong time, Bickerton could have come into court and the court would have stopped Mr. McCormick. But there was no move of that kind, and so I tell you that McCormick had a perfect right to issue an execution and collect that six thousand dollars and the interest. That was the contract, there was nothing wrong about that, and he did it. But Bickerton comes into court and presents a statement to the court, and in that statement sets forth facts

which I will recite hereafter. The court opened the judgment, and allowed the defendant to defend, and gave him an opportunity to show to a jury why this judgment for which execution was issued should not be set aside, and we are now trying that issue. Has Bickerton presented to you any reason why McCormick should not have the right to proceed and collect this sixty-nine hundred dollars from the defendant? If he has failed to show you a reason, McCormick has the right to proceed. The burden is on Bickerton. He says, substantially, "I was lulled into security, I was made to believe a certain thing, and therefore I did not attend the sale, and the sale took place, and I got no credit on the execution for the amount. of six thousand dollars of the mortgage; I got nothing; the property was sold for the costs." Such is the testimony in this case, so far as the last suggestion is concerned. He says that on Friday night, July 5, 1912, he went in a hurry to see the plaintiff, McCormick, out at his farm, and that when he got there, the plaintiff, McCormick, said "Well, if I get the farm that settles your debt; you go in and see Mr. Mercer, my attorney, and whatever Mr. Mercer does will be satisfactory to me." Mr. McCormick says that he did say to Bickerton, whatever Mr. Mercer does will be satisfactory to me," but that he did not say "If I take the farm your debt will be paid." Mr. Balph, a reputable member of this bar of long standing (and so is Mr. Mercer) tells us that on Saturday morning, July 6th, he did not go to the sale at all; and that he did not go because he was notified by Bickerton, his client, not to go, that he had made arrangements with McCormick. Mr. Mercer tells you of an incident that transpired in the Orphans' Court room that morning, in which it is said that Mr. Balph, the attorney for the defendant, offered him one hundred dollars and an agreement in reference to the extension of the time for payment. Mr. Mercer tells you that the agreement was so harsh, unequal and uneven that he would not sign it, and that he did not sign it. McCormick

testified: "I examined the property before I loaned this money. He was at my place two weeks before." You see there is a long stretch of time between the Friday evening previous to the Saturday morning on which the sale actually took place and the time testified to by the plaintiff. Mr. Balph tells you that he advised his client to go out that night to see the plaintiff, McCormick; and yet the plaintiff and his son both tell you that it was about two weeks before that Friday. You must reconcile the testimony if you can, and to the glaring inconsistencies in the testimony in this case you must apply the test of your judgment and common sense. You will compare all the testimony, and gather the probabilities from the whole testimony, and then conclude which one of these parties, the plaintiff or the defendant, is telling the truth. You are to be governed by the weight of the evidence, and as one of the counsel told you in his argument, the weight of the evidence does not mean the number of witnesses on the one side compared with the number of witnesses on the other. There may be many witnesses on one side and few on the other, and yet the force, the effect and the influence of the few witnesses on the minds of the jury may be strong enough to determine the case according to the testimony of the few rather than the testimony of the many. So that the weight of the evidence does not depend entirely upon the number of witnesses, although you are to consider that fact in arriving at the weight of the evidence. Mr. McCormick says that it was on June 15th when Bickerton came out there, and that he was not there on the Friday preceding the sale. He swears absolutely to that fact, saying, "He came to me about June 15th, and he wanted time. I told him that whatever Mr. Mercer did would be satisfactory to me. I did not say, 'If I get the farm that will pay the debt.'" The son of Mr. McCormick, whom you have seen and heard, fixes the time at about June 25th, at about 5:30 in the evening, and he says that the old gentleman was there about twenty minutes. He testified: "I heard the conversation.

All he said to father was to ask for time, and father said, 'You have had all the time I am going to give you,' and sent him to Mr. Mercer. He told father he would like to pay five hundred dollars on the first of August; and father said 'You see Mercer, he is doing my business.' He wanted more time, and time only was discussed." Now you will see that the crucial point in this case, so far as Mercer is concerned, depends partly upon what the old gentleman, McCormick, said to Bickerton. If he said "Go to Mercer, my attorney, and if Mercer will extend the time that will be all right," and the conversation had relation only to the extension of the time for payment, then if Mercer said "If we take the property it will be a release of your debt," it would not be binding. But if McCormick told Bickerton, then and there that evening "If I buy in this farm that will pay the debt," it was not necessary that Mercer should say that to him, provided the old gentleman himself said that he was bound by his promise. For if the plaintiff made the agreement as alleged by Bickerton, to cancel the debt if he bought in the farm, and if the defendant placed confidence in that agreement and was misled, and thereby and by that alone failed to attend the sale to protect his interests, then McCormick, the plaintiff in this case, cannot recover. I wish to say to you also that there must be corroboration of the defendant in this case; and if you find such corroboration in the testimony, in the facts related to you by other witnesses on both sides, this requirement of the law will have been complied with. You have to pay a decent respect to the testimony of all the witnesses, and you should not be guided by the enthusiasm of counsel in their arguments. They are in the line of their duty, but you should carefully consider all the facts in the case and arrive at a decision which will do justice between these parties. The question is not what this farm was worth; it is not what the defendant has lost. I say to you again, the plaintiff has a perfect right to take the farm as he did, and to collect the debt on the

bond. That is the law of the case. Whether that right has been set aside by the acts of the parties and the agreements and the promises as suggested by the defendant and denied by the plaintiff is for you to determine. If you find no such agreement was entered into you find in favor of the plaintiff for the amount of his judgment, six thousand dollars, or whatever it is. But if you find that such an agreement was made, as declared by the defendant, and if he is corroborated by other facts and circumstances in the case, then your verdict ought to be "We find in favor of the defendant."

On motion for a new trial, COHEN, J., filed the following opinion:

The defendant was indebted to plaintiff in the sum of $6,000.00 on his judgment bond, accompanying a mortgage on his farm of that amount, which defendant had delivered in consideration of a loan of a similar sum from the plaintiff to defendant. Default having been made in payment of interest, the bond was entered of record and an execution issued for its collection, and the realty described in the mortgage bought in by plaintiff for taxes and costs, amounting to $290.06. An alias fi. fa. was issued and a levy made on certain personalty of defendant, with a view to collect the full amount of the debt. A rule was granted to open the same and stay proceedings; whereupon, after answer filed and testimony taken, upon argument, the rule was (in our opinion) properly made absolute. After notice to plead by plaintiff, defendant pleaded payment of the judgment. The jury were instructed that the plaintiff had a legal right to collect the amount of his execution on the bond, unless estopped by his own acts, the jury found a verdict for the defendant. The defense amounted to an equitable estoppel, which, it is claimed, prevented the collection of the claim. The testimony developed the following facts: that on the day preceding the sale of the realty, defendant called on plaintiff concerning the sale of the land and the payment in satisfaction of the judg-

ment.   Defendant asked to stay the sale, and that he would pay something on account.   Plaintiff refused, saying that he must have the money or the farm, but that if he bought the farm it would be payment and satisfaction of the bond, and that he (defendant) should call on his (plaintiff's) attorney, Mr. Mercer, and that whatever he did would be satisfactory to the plaintiff.   Defendant, accordingly, on the day following (the day of the sale) called upon Mr. Mercer, who, it was testified, told him substantially the same thing as plaintiff had told him, that the sale would proceed and that if he desired to redeem the farm after the sale he could do so, and that if plaintiff bought the farm and defendant failed to redeem it, that would be payment of the debt in question.

Defendant testified that, relying on this promise of plaintiff and his attorney, he did not attend the sale, discontinued his efforts to raise the money, and notified his counsel by reason thereof not to attend the sale, that he had arrangements with a party (naming him) to raise the money, and that his attorney was to have been present at the sale and bid.   His attorney testified that his client (defendant) notified him not to attend the sale, as he had made arrangements with the plaintiff which were satisfactory to him.   Plaintiff and two other witnesses, one of whom was plaintiff's counsel in question, denied the defendant's testimony as above recited concerning those essential matters, but the jury found for the defendant.

Although not material, it would appear from the evidence that the farm was worth far more than the debt. The validity of the original debt was not involved.   Under the plea as filed, defendant must prove payment or an adequate defense, barring plaintiff's recovery in good conscience.

There was no dispute as to the bona fides of the bond involved; the defense confessed its execution and correctness, but sought to legally establish its payment through the medium of an equitable estoppel arising by

virtue of the above-cited facts. We are of opinion that it was not, therefore, essential or legally necessary that the defendant should have been corroborated, as the validity of the instrument was not disputed. The proceeding was not one to change, vary or modify the terms of a written instrument, but to actually annul it by reason of circumstances which arose between the parties. subsequent to its delivery, as indicated in the foregoing excerpt from the testimony. Having made promises to defendant, as found by the jury, plaintiff was estopped from proceeding to collect the claim.

In the several cases presented by plaintiff's counsel embodying the principle laid down in English v. Hager, 119 Pa. 533, there was an attempt to establish an attack on the original instrument with a view to modify or set it aside. Corroboration of defendant, therefore, in those cases was necessary. Not necessarily so, however, where an instrument is sought to be avoided on the ground of an equitable defense based upon occurrences between the parties subsequent to its execution and delivery. In such case the uncorroborated testimony of the defendant is sufficient to submit the case to the jury: Juniata Building & Loan Association v. Hetzel, 103 Pa. 507.

No attempt was made in the case at bar to void the instrument, but its purpose was to prevent collection of the claim on equitable grounds arising long subsequent to the execution of the bond. There was, however, evidence which, if believed, amounted to corroboration. The court even directed the jury that they must find such, which was to the plaintiff's advantage and militated against the defendant. The existence of disputed material facts would prevent judgment n. o. v., as asked for, even though the law were otherwise than as stated above, nor could the request for binding instructions have been granted for the same reason. We do not consider the verdict was against the weight of the evidence or the law governing. The value of the farm, commented upon by counsel, which was objected to, was first brought

to the jury's attention by plaintiff's counsel in his address to the jury, and was replied to by defendant's attorney. Proper consideration of the other objections convinces us that they have nothing to sustain them in fact or in law. A critical review of the entire case demands the refusal of a new trial.

Verdict for defendant and judgment thereon. Plaintiff appealed.

*Errors assigned* were rulings on evidence and instructions to the jury.

*C. K. Robinson,* with him *D. B. Maxwell* and *A. H. Mercer,* for appellant.

*James Balph,* with him *R. A. Balph,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1916:

The questions in the case have been elaborately discussed in the charge and opinion of the learned trial judge and little, if anything, need be added to sustain the judgment. The defendant's farm was sold by the sheriff on a judgment of $6,000.00 entered on a judgment note, secured by a mortgage of like amount on the real estate sold. The plaintiff purchased the property for the amount of taxes and costs. He subsequently issued an alias fieri facias to collect the judgment, and having levied on the personal property of defendant, the latter applied to the court and the judgment was opened. The defendant pleaded payment. In his petition to open the judgment and on the trial, the defendant set up certain facts which he claimed worked an estoppel and prevented the collection of the judgment. The learned court in its opinion refusing a new trial states the facts as developed by the testimony and as found by the jury, as follows: "That on the day preceding the sale of the realty, defendant called on plaintiff concerning the sale of the land and the payment in satisfaction of the judg-

ment. Defendant asked to stay the sale, and that he would pay something on account. Plaintiff refused, saying that he must have the money or the farm, but that if he bought the farm it would be payment and satisfaction of the bond, and that he (defendant) should call on his (plaintiff's) attorney, Mr. Mercer, and that whatever he did would be satisfactory to the plaintiff. Defendant, accordingly, on the day following (the day of the sale) called upon Mr. Mercer, who, it was testified, told him substantially the same thing as plaintiff had told him, that the sale would proceed and that if he desired to redeem the farm after the sale he could do so, and that if plaintiff bought the farm and defendant failed to redeem it, that would be payment of the debt in question. Defendant testified that, relying on this promise of plaintiff and his attorney, he did not attend the sale, discontinued his efforts to raise the money, and notified his counsel by reason thereof not to attend the sale, that he had arrangements with a party (naming him) to raise the money, and that his attorney was to have been present at the sale and bid. His attorney testified that his client (defendant) notified him not to attend the sale, as he had made arrangements with the plaintiff which were satisfactory to him."

We need not refer to the testimony from which the jury found the facts. It was conflicting and would have justified a different finding. The defendant relied on his own testimony and corroborative facts disclosed by other testimony to sustain the alleged agreement or arrangement which the jury found and which is set up by the defendant as an estoppel. The plaintiff, his son, and attorney, contradicted material parts of the defendant's testimony. The court, in its charge, directed the jury's attention to all the testimony bearing on the question at issue and instructed them, inter alia, as follows: "I wish to say to you also that there must be corroboration of the defendant in this case; and if you find such corroboration in the testimony, in the facts related to you

by other witnesses on both sides, this requirement of the law will have been complied with."

The finding of the jury under these instructions relieves us from determining whether the defendant, in addition to his own testimony, was required to produce additional testimony or corroborative facts to warrant the court in submitting the case to the jury. They have found that the defendant's story was corroborated. It is contended by the plaintiff, however, that there was no competent evidence of corroboration, and the testimony admitted for this purpose is the subject of some of the assignments of error. Those assignments cannot be sustained. This testimony clearly tended to corroborate the defendant's evidence by showing the inherent probability of willingness on the part of the plaintiff to accept the farm in satisfaction of the debt, and that the defendant relied on some arrangement or agreement as a reason for discontinuing his efforts to find a purchaser, and for himself and his attorney remaining away from the sheriff's sale which was manifestly to his detriment. It was competent and relevant to show that the plaintiff visited the farm at the time he made the loan and, therefore, knew its condition and its sufficiency as security for the loan which was secured by the mortgage. A mortgagee, as is well known, usually requires the value of the property to be largely in excess of the loan, and hence the probability not only that the plaintiff was willing to take the farm in payment of the debt, but that the defendant by some arrangement would attempt to protect himself against the sacrifice by a sale of the mortgaged premises. The mortgage was not only referred to in the statement of claim as accompanying the bond, but was necessarily a part of the case under the issue submitted to the jury. The fact that the mortgage was not a lien on the premises at the time of the trial could be no objection to its admission when the case was submitted to the jury. If, as argued by the appellant's counsel, the mortgage was offered as evidence of the

value of the real estate, it did the appellant no harm, in view of the fact, as stated in the court's opinion, that the value of the farm was first brought to the attention of the jury by appellant's counsel in his address to the jury, and was replied to by defendant's attorney.

The parts of the charge assigned for error when read with the context disclose no reversible error. When a charge taken as a whole is not erroneous or inadequate and presents the issues of fact fully to the jury, we will not reverse, although portions of it standing alone may fairly and justly be open to criticism.

Judgment affirmed.